IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| JOANN PELLETIER<br>Plaintiff | :<br>:<br>: |
| v. | : CIVIL ACTION NO.<br>: 3:05-cv-30109-MAP |
| SANDRA TALBOT and | : |
| CHITRA PUBLICATIONS, et. al.,<br>Defendants | :<br>: |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

AND NOW this 15th day of May, 2006, comes Defendants Chitra Publications, Chariot Publishing, Inc., Christian Meunier d/b/a Moon Over Mountain, by and through their attorney, Joseph D. Buckley, Esquire, and sets forth this Memorandum as follows:

### Questions Presented and Short Answers

1. Does Plaintiff have a valid copyright in a pattern and design entitled "Sew Many Spools"? No, Plaintiff acknowledged she copied her alleged original design and pattern from a book previously authored by quilter and quilt designer Janet Kime.

2. Did Defendant Talbot copy any design or pattern of Plaintiff to create her quilt entitled "Just Spooling Around"? No, Defendant Talbot used ideas expressed by Plaintiff taken from Janet Kime's book, ideas and layouts shown in Janet Kime's book and other books and Defendant Talbot's own skill as a quilt maker to create "Just Spooling Around".

3. Will Plaintiff be irreparably harmed if a preliminary injunction is not issued? No.

4. Is it likely Plaintiff will succeed in the merits of her action? Absolutely not.

## STATEMENT OF FACTS

Chitra Publications is a Pennsylvania Limited Partnership with Chariot Publishing, Inc. as its general partner. From 1985-2005, Chitra was in the business of publishing magazines and books relating to quilting. Christiane Muenier, a Pennsylvania resident, is an officer and shareholder of Chariot Publishing, Inc. Muenier is also a partner in the Pennsylvania partnership Moon Over Mountain which is a distributor and wholesaler of books, magazines and quilt related items. Moon Over Mountain does not operate a retail business, but does have a website through which persons may purchase books, magazines and other items at retail. Sandra Talbot is a quilt maker from Massachusetts. Plaintiff is a quilt lecturer and teacher but is not a quilt maker.

Quilting is the technique of piecing cut pieces of selected fabric, of the similar or different shapes, together to create a quilt top, or of appliquéing pieces of cut fabrics on top of a large piece of fabric to then create a quilt top. Once the top is constructed either through the piecing or appliqué technique, it is placed on top of two of the three other components of a

2

quilt: the backing and batting. Backing is the outside layer of a quilt generally made of large pieces of fabric or sewn pieces of fabric. Batting is the middle layer made generally from cotton, polyester, silk, wool or a combination of any of them. The final component is the quilting: the thread used to bind the three layers together. The quilting may be completed in a design, straight or curved lines and depending on the skill of the quilter and the thickness of the three layers, stitches vary between two to twenty stitches to the inch.

Quilts have been a part of American history since colonial times and have been created by men and women for utilitarian purposes using scraps of fabric or discarded clothing, and for decorative purposes using cotton, wool, polyester blends, chintz, silk and velvet fabrics. Quilts have been made from commercial patterns published by others, from lessons taught by a family members or friends, from numerous published books and articles written on the subject, from classes given by more experienced quilters to novice students desiring to learn the craft, to artists whose original designs grace the many exhibits and quilt museums. Quilts come in multitude of shapes, sizes, colors and patterns and there are currently over five million people in the United States who are engaged in quilting.

There are thousands of quilt related books and patterns available for any quilt maker to use in his or her efforts in creating a quilt.

In 1992, Janet Kime a quilter and author from Vashon Island, Washington released her 153 page book entitled *"Log Cabins: New Techniques for Traditional Quilts."* (A true and correct copy of the cover and title page of the Book are attached hereto and marked Exhibit "A") On pages 41 through pages 43 of said book, Kime sets forth methods for using a traditional pattern commonly called "Courthouse Steps" in various ways to create finished quilts including one entitled "Yellow Spools" and one entitled "Amish Spools." (A true and correct copy of the said pages 41-43 of the book are attached hereto and marked Exhibit "B") On page 67 of said book, Kime shows "Amish Spools" created by quilter Virginia Morrison of Seattle Washington in 1991, and on page 70 of said book, Kime shows "Yellow Spools" created by Lorraine Herge of Concord, North Carolina and Janet Kime in 1991. (True and correct copies of these pages from Kine's book are attached hereto and marked Exhibit "C")

Sometime after the said Kime book was published, Plaintiff purchased or otherwise procured a copy of the said book, and began copying the patterns and instructions from the said book for use in Plaintiff's quilting

4

classes and lectures. In late 1992 or early 1993 Plaintiff held lectures and/or classes relating to the history of log cabin quilts and while discussing variations of the use of the block called "Courthouse Steps" and/or "Log Cabin Spools" acknowledged that Plaintiff's design and pattern had been copied by Plaintiff from the said Kime book. (A true and correct copy of Plaintiff's handout provided to her students and obtained from Plaintiff during discovery is attached hereto and marked Exhibit "D"). Defendant Talbot attended Plaintiff's lecture and/or class and was given a copy of said hand out from Plaintiff which acknowledged the pattern described in the handout had been copied from the said Kime book. Sometime after attending Plaintiff's lecture or class and based on Plaintiff's acknowledgment that she had copied her idea, pattern for the log cabin spool block and design from the Kime book, Defendant Talbot purchased a copy of the said Kime book. (A true and correct copy of the cover of the book and dated sales receipt for the book provided by Defendant Talbot to Plaintiff in discovery is attached hereto as Exhibits "E" and "F"). Defendant also purchased or had in her collection of quilt books, other books relating to quilting which set forth many accepted methods for creating log cabin style quilts and possible layouts for quilt tops using log cabin style blocks. (A true and correct copy of the cover of

one of these books provided by Defendant Talbot to Plaintiff in discovery is attached hereto as Exhibit "G")

Sometime prior to 2000, Defendant Talbot using her many quilt books, including said Kime book, designed a pattern for a quilt top she would later call "Just Spooling Around." After settling on the design including placement of the blocks, sashing and border, Defendant Talbot took time to select the numerous pieces of differing color fabric she would use to transform her idea into an actual quilt top. After selecting the fabrics to be used, Defendant Talbot pieced together one hundred quilt blocks and then began piecing rows of these blocks using the sashing she had designed. Once the center portion of the top was created, by attaching the blocks to the sashing and the rows of blocks and sashing to each other, Defendant Talbot decided that a simple border of dark fabric was the perfect finishing touch. Defendant Talbot then delivered her completed quilt top, batting and backing fabric to her quilter, Janis Austin Gilbert, who then machine quilted the project. The raw edge of the quilt was then bound and Defendant Talbot's unique quilt completed.

Sometime prior to 2000, Plaintiff removed the reference to the said Kime book from her handouts and began crediting herself for the "Spools" design and pattern. At some time after purchasing the said Kime

Book, Plaintiff using the Kime book as a guide, did piece together a few "courthouse step" blocks using the "spools" pattern and design found in the Kime book. (A true and correct copy of photos of such blocks provided by Plaintiff during discovery are attached hereto and marked Exhibit "H")

Chitra Publications is in the business of publishing magazines and books relating to quilting. In 2000, Chitra was publishing a variety of magazines including three separate magazines devoted to quilting: *Quilting Today, Traditional Quiltworks* and *Miniature Quilts. Quilting Today* published multiple issues per year and its many articles ranged from interviews with nationally known quilters to photographs and patterns for contemporary, traditional and antique quilts. Chitra received hundreds of photographs from quilters across America asking that their quilts be selected to be shown in the magazine.

Chitra also had subscribers of its magazines act as "quilt scouts". The said "quilt scouts" would photograph quilts being displayed at public exhibitions of quilts, usually at local, regional and national quilt shows, which the quilt scouts believed might be appropriate for inclusion in one of the quilt related magazines published by Chitra. In March of 2000, Sara Fredette, a Chitra "quilt scout", visited a public display of quilts

sponsored by the Pioneer Valley Quilter's called "Pieces of Time" held in Agawam, Massachusetts and photographed a quilt entitled "Just Spooling Around" made by Defendant Talbot. Sara Fredette sent a photograph of the Talbot's quilt to Chitra, noting on the back of the photograph that the maker was Sandra M. Talbot of Longmeadow, MA. (A true and correct copy of the front and back of the photograph is attached and marked Exhibit "I").

After receiving the said photograph members of Chitra's editorial staff reviewed the photograph, decided that Talbot's quilt might be appropriate for inclusion in its magazine and learned the address of Defendant Talbot, noting it on the reverse of the photograph of her quilt. On three separate occasions in 2000, 2001 and 2002, Chitra's staff wrote to Defendant Talbot concerning the possible inclusion of her quilt in Chitra's publications. (A true and correct copy of the letters are attached hereto and marked Exhibits "J", "K" and "L") Enclosed with each letter was a blank quilt questionnaire.

Any quilter whose quilt may appear in an issue of any magazine published by Chitra is sent a two page quilt questionnaire relating to the quilt so that Chitra and its editors may show and/or create and publish a pattern for the quilt. The said questionnaire, among other things, requests

the name address and phone number of the owner of the quilt, the title of the quilt, information regarding the design and its origin.

The said questionnaire specifically informs the quilt owner that a member of Chitra's professional staff will create a pattern from the quilt, but if the quilt has been made from a published design, made from a pattern or is an interpretation of someone else's design that Chitra will not show the quilt or create a pattern without permission from the publisher, designer or quilt maker. If the owner is aware that the quilt has been made from a published pattern or from the interpretation of someone else's design, the said questionnaire requests the name of the quilt designer or quilt maker, the year the pattern, if any, was published and by whom and any known addresses of such persons or publishers.

The questionnaire requests information about the actual quilt, its size and description, whether it had been published and also information about the quilter. The questionnaire then has many separate spaces for the person submitting the quilt to sign agreeing to grant Chitra the right to create and publish a pattern for the quilt and to show the quilt in its magazine any future publications and on its various websites and guaranteeing that the quilt "is in no way an infringement on the rights of others and that the material may be published without additional

approval." Upon receipt of a completed and signed questionnaire and agreement, if the submitter indicates that the quilt was made using a pattern or made from an interpretation of someone else's design, Chitra will not accept the quilt for its magazine unless the publisher of the pattern or creator of the design is identified and contacted and written permission received to show the quilt and to create a pattern from the quilt. If either the publisher or designer can not be identified or if identified, does not consent in writing to permit the publication of the quilt and the creation of the pattern, the submission is rejected and quilt will not be shown nor a pattern created.

On or about September 20, 2002, Chitra received a quilt questionnaire completed and signed by Defendant Talbot relating to her quilt "Just Spooling Around". (A true and correct copy of which is attached hereto and marked Exhibit "M") Defendant Talbot represented that "Just Spooling Around" was Defendant Talbot's personal "interpretation of a traditional design called Courthouse Step Log Cabin." Following the review of her quilt questionnaire, by letter dated October 28, 2002, Chitra informed Defendant Talbot that it desired to pattern her quilt and show it and publish the pattern in a future issue of its magazine. (A true and correct copy of which is attached hereto and marked Exhibit "N").

In January 2003, Chitra discontinued its three former publications and introduced a new magazine entitled *"QuiltWorks Today."* By letter dated January 21, 2003, Chitra requested Defendant Talbot ship her quilt "Just Spooling Around" to Chitra to enable Chitra to create a pattern for the quilt and also to have it professionally photographed. (A true and correct copy of which is attached hereto and marked Exhibit "O")

Thereafter, Defendant Talbot shipped her quilt "Just Spooling Around" to Chitra which photographed the quilt and had its professional staff of quilt pattern writers develop a pattern for the quilt top using two separate methods of quilt making: pieced method and foundation method.

On March 23, 2003, Chitra returned the quilt "Just Spooling Around" to Defendant Talbot. (A true and correct copy of the receipt for shipping is attached hereto and marked Exhibit "P") On May 20, 2003, Chitra sent Defendant Talbot a preliminary prepress copy of the caption to be used for "Just Spooling Around" which was scheduled to be published in *QuiltWorks Today*, Issue #4. (A true and correct copy of which is attached hereto and marked Exhibit "Q") In the October/November Issue of *QuiltWorks Today*, Issue #4, Chitra published a copy of the photograph of Defendant Talbot's quilt "Just Spooling Around" and the pattern to create

the said quilt which had been created by Chitra's pattern designer ("Chitra's copyrighted pattern").

On October 28, 2003 following submission of the October/November issue of *QuiltWorks Today* Issue #4 to the United States Copyright Office, Chitra received a Certificate of Copyright for said Issue #4 which included the Chitra's copyrighted photograph and pattern. (A true and correct copy of which is attached hereto and marked Exhibit "R")

In December 2003, Chitra selected "Just Spooling Around" and Chitra's copyrighted pattern to appear in a quilt pattern book, later titled *"My Favorite Scrap Quilts"*, and by letter dated December 10, 2003, informed Defendant Talbot that her quilt was selected for the new publication. (A true and correct copy of which is attached hereto and marked Exhibit "S") In February 2004, Defendant Talbot was requested to ship and did ship her quilt "Just Spooling Around" to Chitra for inclusion on a proposed cover for the new book, later titled *"My Favorite Scrap Quilts"*. (A true and correct copy of which is attached hereto and marked Exhibit "T").

On September 17, 2004 following submission of its book entitled *A Few of My Favorite Scrap Quilts*, and additional communications and correspondence to the United States Copyright Office, Chitra received a

12

Certificate of Copyright for said book which included the Chitra's copyrighted photographs and pattern. (A true and correct copy of which is attached hereto and marked Exhibit "U")

Following the introduction of its newly published book, *My Favorite Scrap Quilts*, in 2004, Plaintiff contacted Chitra claiming that Defendant Talbot's quilt was made from Plaintiff's original design. Chitra inquired of Plaintiff if she had even ever made a quilt using the design and pattern she claim to have authored and she admitted she had not. Chitra and its then staff of more than twenty quilt experts determined that Plaintiff's claim was without merit, that Defendant Talbot's quilt was a variation of a quilt block in the public domain, and informed Plaintiff of the same and the lack of merit to her assertions.

At no time prior to Defendant Talbot's creation of her quilt "Just Spooling Around", or prior to Chitra's independent creation of its copyrighted pattern of the same and its copyrighted photographs of the same and the publication of them in its magazine and book, had Plaintiff ever created a quilt top or finished quilt using the "spool design."

Thereafter in early September 2004 Plaintiff developed a pattern and design, and submitted it the United States Copyright Office claiming that it had been first published in 1993. Plaintiff did not inform the United

States Copyright Office that she had copied her design and pattern from patterns and photographs of quilts contained in Janet Kime's Book, *Log Cabins: New Techniques for Traditional Quilts*. A week following her submission of her alleged original pattern and design to the Copyright Office, Plaintiff through counsel, wrote a letter to Chitra requesting it cease and desist from publishing Chitra's copyrighted magazine and copyrighted book alleging that Defendant Talbot's unique quilt and Chitra's copyrighted pattern had been copied from Plaintiff and infringed on Plaintiff's alleged original design and pattern.

In response to the letter and the demands of Plaintiff and her attorneys, Chitra through its Publisher, Christiane Muenier, again informed Plaintiff and her counsel that Plaintiff's claim had no merit and that they should fully research the history of the courthouse step block, as it was in the public domain and a multitude of its variations were in existence.

Plaintiff and her attorneys later filed the present action against Talbot, Chitra, Chariot and Muenier. All Defendants have denied any copyright infringement on their part and all challenge the validity and motivation behind Plaintiff's present action.

## STATEMENT OF THE LAW

In order to demonstrate entitlement to a **preliminary injunction,** the moving party must show that: (1) they will suffer irreparable injury absent the injunction; (2) the injury will outweigh the harm imposed on any defendant if the injunction is granted; (3) they are likely to succeed on the merits of the case; (4) the injunction does not adversely affect the public interest. Planned Parenthood League of Mass. v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981).

However, in **copyright** cases, "irreparable harm is usually presumed if likelihood of success on [a] **copyright** claim has been shown." Concrete Mach. Co. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 611 (1st Cir. 1988). This in no way requires a court to issue a preliminary injunction where there may be considerable doubt about the strength of a party's copyright claims. See, Inkadinkado, Inc. v. Myers, 68 USPQ 2d (BNA) 1540 (2003, U.S. District Court for Massachusetts.)

The First Circuit Court of Appeals has consistently stated:

" To establish **copyright** infringement, a plaintiff must prove (i) ownership of a valid **copyright,** and (ii) copying of constituent elements of the work that are original. Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 113 L. Ed. 2d 358, 111 S. Ct. 1282 (1991); Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807, 813 (1st Cir. 1995) (collecting cases), aff'd, 133 L. Ed. 2d 610,   U.S.   , 116 S. Ct. 804 (1996); Concrete Machinery, 843 F.2d at 605; 3 Nimmer § 13.01, at 13-5 to 13-6. To show ownership of a valid **copyright** and

15

> thus satisfy the first prong under Feist, a plaintiff must prove that the work as a whole is original and that the plaintiff complied with applicable statutory formalities. Id.
>
> Once the plaintiff produces a certificate of **copyright,** which constitutes prima facie evidence of copyrightability in judicial proceedings, the burden shifts to the defendant to demonstrate why the **claim of copyright** is invalid. See 17 U.S.C. § 410(c); Lotus, 49 F.3d at 813; Folio Impressions, Inc. v. Byer California, 937 F.2d 759, 763 (2d Cir. 1991). "At this juncture, it is incumbent upon a putative infringer to establish that the work in which **copyright** is claimed is unprotectable (for lack of originality) or, more specifically, to prove that the portion of the copyrighted work actually taken is unworthy of **copyright** protection." Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1541 (11th Cir. 1996). Upon defendant's proof of lack of originality by plaintiff through evidence that the plaintiff copied from prior works, the burden shifts back to the plaintiff to prove originality. See, e.g., Masquerade Novelty, Inc. v. Unique Industries, Inc., 912 F.2d 663, 667 (3d Cir. 1990); Midway Mfg. Co. v. Bandai-America, Inc., 546 F. Supp. 125, 140 (D.N.J. 1982); Nimmer, § 12.11[B] at 165-67. "The burden on the defendant to rebut the presumption varies depending on the issue bearing on the validity of the **copyright.** Where, for example, the issue is whether the copyrighted article is 'original,' the presumption will not be overcome unless the defendant offers proof that the plaintiff's product was copied from other works or similarly probative evidence as to originality." Masquerade Novelty, 912 F.2d at 668-69; see Nimmer, § 12.11[B], at 165-67."

CMM Cable Rep v. Ocean Coast Props., 97 F.3d 1504, 1513 ( 1st Cir., 1996)


ARGUMENT

In 1993, Plaintiff admitted she copied her spools design and pattern from a 1992 book authored by Janet Kime entitled *"Log Cabins: New Techniques for Traditional Quilts."* ( See Exhibit D). In 2004, Plaintiff claims she created the same design and pattern. Comparing Plaintiff's

alleged original design to the designs and quilts created by author and quilter Janet Kime (Exhibits A, B & C) clearly evidences Plaintiff's lack of any authorship, originality or creativity in the development of a design and pattern. **It is an exact copy**. It is unworthy of any protection. CMM Cable Rep v. Ocean Coast Props., 97 F.3d 1504, 1513 ( 1st Cir. 1996)

In 1992 or 1993, Plaintiff taught a quilting class attended by Defendant Talbot. Plaintiff distributed a copy of a quilt block design and pattern she admittedly copied from a book authored by Janet Kime. Plaintiff informed Defendant Talbot about the Kime book and the designs contained in the book. Defendant Talbot bought the Kime book and later designed a quilt using the patterns, layouts and photographs from the Kime book and other books. Defendant Talbot made a quilt top from the layout set developed and sent it to a friend to be quilted. The quilt was hung in a local quilt club's quilt show. Believing it was a wonderful quilt worthy of recognition, someone photographed it and sent a photo to a national magazine, Defendant Chitra Publications. Defendant Chitra obtained permission from Defendant Talbot to photograph and create a pattern for Talbot's quilt and then filed and received a registration of copyright from the United States Copyright Office for its photos and pattern of Talbot's quilt.

Copyrighted photos of Talbot's quilt and the copyrighted pattern then appeared in a pattern book independently created by Defendant Chitra.

Upset for only reasons which Plaintiff has knowledge, Plaintiff complained to Chitra that Talbot's quilt was made from a pattern and design Plaintiff had authored. Plaintiff neither produced nor presented either her alleged copyrighted pattern or even a quilt or quilt top she had made using the alleged copyrighted design. It is unknown when the pattern and design Plaintiff submitted to the Copyright Office was even created.

Plaintiff did obtained a certificate of copyright for her pattern and design. However, it is apparent based on her own admissions as to the origin of the pattern design and her failure to represent the true origin of the design and pattern to the Copyright Office, that her issued certificate may rightly be invalidated. See, Eckes v. Card Prices Update, 736 F. 2d 859 92d Cir. 1984)(willful misrepresentation on an application for registration is grounds to invalidate the certificate).

On the other hand, Defendant Chitra obtained a copyright to its copyrighted pattern long before Plaintiff filed with the Copyright Office. Defendant Chitra created the pattern not from copying it from a published book, but by carefully studying the finished quilt and calling on the skill and

training of its professional staff to create various methods to make such a quilt.

Plaintiff is not likely to prevail on the merits of her complaint against Defendants.

## CONCLUSION

Plaintiff admitted her design and pattern were copied from a earlier published work therefore she has failed to meet the burden required for preliminary injunction. She has failed to show that she will be harmed unless the injunction is issued, that she will be likely to prevail on the merits of her case and that she has a protected copyright interest. Therefore her motion should be dismissed.

Respectfully submitted,

Joseph D. Buckley, Esquire
Attorney for Defendants and Counterclaimants
Chitra Publications, Chariot Publishing, Inc. and
Christiane Meunier
1237 Holly Pike
Carlisle, PA 17013-4435
JoeBLaw@aol.com
(717) 249-2448

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.